Bridget MANAHAN, Plaintiff,

v.

YACHT HAVEN HOTEL,
et al., Defendants.

Civ. A. No. 1986/567.

District Court, Virgin Islands,
D. St. Thomas and St. John.

Aug. 14, 1992.

Corey L. Gordon, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Peter A. Martin, Redstone, CO, for plaintiff.

Rodney E. Gould, Rubin, Hay & Gould, Framingham, MA, for defendants Mainline Travel, Inc.

James L. Hymes, III, St. Thomas, VI, for Virgin Islands Yacht Harbor, Inc.

1. For full facts and reasoning refer to the original Memorandum and Order, dated January 10, 1992.

## MEMORANDUM

GILES, District Judge.

During a trip to St. Thomas in February, 1986, Bridget Manahan was physically assaulted by an unknown male who attempted to snatch her purse. She lost an eye as a result. She brought suit against the Yacht Haven Hotel and MLT Vacations alleging that their negligence was a proximate cause of her injuries. On January 10, 1992, after consideration of briefs and oral argument, summary judgment was granted in favor of defendants. 821 F.Supp. 1105.[1] Before the court are plaintiff's motion for reconsideration, the defendants' answers, and the parties' replies thereto. For the reasons which follow, plaintiff's motion is DENIED.

## DISCUSSION

In response to the defendants' summary judgment motions, plaintiff argued that she had a valid negligence claim pursuant to Restatement (Second) of Torts § 314A, which provides that "[a]n innkeeper is under a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm." See Restatement (Second) of Tort § 314A (1965). However, this court granted summary judgment in favor of the defendants after finding that plaintiff failed to produce any evidence showing that they breached a duty owed to her as a hotel patron. Specifically, plaintiff failed to show that defendants had actual knowledge of, or a duty to learn about, unusual crime conditions existing within or immediately outside the hotel.

In moving for reconsideration, plaintiff contends that the court erred in applying only Section 314A to her filed claims. She now argues that Restatement (Second) of Torts § 311, should also be applied. In relevant parts, that statute dictates that "(1) one who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information

..." Restatement (Second) of Torts § 311 (1965).[2]

■ Pursuant to Section 311, plaintiff seeks to hold the defendants liable for Whitehouse's statement that the street route between the hotel and the restaurant was "well lit" and, therefore, "safe". She argues that since Whitehouse was concierge at the hotel, she relied upon Whitehouse's knowledge of the area to decide whether the street route between the hotel and the restaurant remained safe to walk.

However, what remains key under a Section 311 analysis is that plaintiff must have *reasonably* relied upon such a statement, and that reliance must be the proximate cause of her injuries. On the night in question, plaintiff could not have reasonably relied upon Whitehouse's statement, since she admits to discerning that the street route between the hotel and the restaurant was not "well lit" before encountering the dangers presented therein.

In plaintiff's affidavit dated 2/27/92, she states:

> Indeed, as I discovered to my detriment, the roadway was not well lit at all, and was, in fact, after the sun went down, extremely dark and virtually devoid of any artificial illumination. Moreover, the February sky in the Caribbean lends very little natural light at nights, thus making vast portions of the roadway at that time virtually pitch black.

Manahan Affidavit, Feb. 27, 1992, p. 4.

Manahan errs arguing that the defendants are for her injuries under Section 311. For one may not "blindly act on a statement in disregard of an opportunity to learn the truth when by the exercise of ordinary attention he would have learned it." *W.H. Hobbs*

Supply Co. v. Ernst, 270 Wis. 166, 170, 70 N.W.2d 615 (1955), *quoted in Williams v. Rank & Son Buick*, 44 Wis.2d 239, 170 N.W.2d 807, 811 (1969). The recipient of a fraudulent statement is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Restatement (Second) of Torts, § 541, Comment a (1965).

Plaintiff now submits a second supplementary affidavit wherein she states that only about "the last half block of the path from Havensight to Yacht Haven" lacked illumination, in contrast to the earlier affidavit in which she recalled "vast portions of the roadway ... [as being] virtually pitch black." Nonetheless, it remains true that plaintiff admits to knowingly walking into the darkness.

In plaintiff's most recent affidavit she states:

> In terms of distance, the route from the entry way to the Yacht Haven parking lot to the entrance to the Havensight Mall was approximately .25 miles, or roughly three city blocks. The area that I have been describing above that was pitch-black is approximately the last half block of the path from Havensight to Yacht Haven. Thus, by the time I reached the point along the pathway where there was virtually no illumination, it was more than two blocks back to Havensight Mall and only approximately half a block to the entry way to the Yacht Haven parking lot.

Manahan Second Supplementary Affidavit, July 7, 1992, p. 3.

By her testimony, plaintiff had specific knowledge that the route that night was not well lit for whatever reason.[3] Therefore, for

---

**2.** Defendants argue forcefully that plaintiff's motion should be denied because her Section 311 theory of liability was belatedly asserted. Plaintiff counters, however, that she did not have ample opportunity to assert all her legal theories before the granting of summary judgment. The court recognizes that a motion for reconsideration serves only to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert denied*, 476 U.S. 1171, 90 L.Ed.2d 982 (1986); *Keyes v. National R.R. Passenger*

*Corp.*, 766 F.Supp. 277 (E.D.Pa.1991); *Johnson v. Heckler*, 607 F.Supp. 875, 877 (N.D. Ill.1984), *aff'd*, 769 F.2d 1202 (7th Cir.1985). However, in the interest of justice and in resolving all doubts in plaintiff's favor, it will reconsider herein the summary judgment in light of the present record and allow plaintiff's Section 311 liability theory and proffered evidence.

**3.** Plaintiff also walked the same route two days before the attack either in the night or dusk and had observed that there were no street lights

one to commence and continue walking into the "pitch blackness" solely on the strength of an alleged statement made two days prior that "the route is well lit" is not reasonable reliance as a matter of law, particularly, where it can be seen, literally, that the statement is incorrect and unreliable. What's more, plaintiff has not submitted any evidence to show that she did not have alternative means of getting back to the hotel.

Plaintiff chose to travel the route despite her realization that Whitehouse's statement that "the route is well lit" was incorrect. Once plaintiff encountered the dark area of the street route, she admits noting the distance of walk left to reach the hotel and the distance of walk back to the restaurant. Prior to continuing her walk back to the hotel, she necessarily weighed the danger of walking the rest of the way in darkness against the reasonableness of walking back in the light to the restaurant to call a cab. What she chose to do at that point was not a matter of another's negligence but one of her own prerogative.

Moreover, plaintiff had previously been warned to take cabs at night and indeed followed the routine of traveling by taxicab, taking them even for short distances. For example, plaintiff took taxicabs for short distances while in the company of two males and one female companion just the night before her attack. Manahan Deposition p. 52, lines 13–18; Hauth Deposition p. 123, lines 7–13, 17–22.

Plaintiff also alleges that she understood Whitehouse's opinion to be that the street route between the hotel and the restaurant was "well lit" *and* "safe". She argues, therefore, that although she discerned that the last fifth of the street route was not "well lit", based upon Whitehouse statement, she continued to believe that the path was still safe to walk. Plaintiff, however, has adduced no evidence or logical reasoning which reasonably support such a conclusion. Indeed, she admits of being conscious of the admonition of general crime in St. Thomas when she elected to continue on her walk back to the

illuminating the area that she had to travel back to the hotel and that part of the route was cov-

hotel although she reached a point in the route where it became "pitch black". Therefore, as a matter of law, the court finds that plaintiff does not have a valid claim against the defendants under Section 311.

■ Manahan also moves for reconsideration on the basis that the court granted summary judgment in favor of the defendants in the absence of police log books of reported crimes and additional depositions. However, the court finds that plaintiff's newly proffered evidence is not probative of the issues of duty invoked by the innkeeper/guest relationship, or of foreseeability or notice presented by Section 314A of the Restatement (Second) of Torts. The police log and plaintiff's deposition evidence provide no proof that the innkeeper, Yacht Haven Hotel, or the other defendants had specific knowledge that there was a special crime condition (such as crimes committed by an uncaptured serial killer or mugger) existing immediately outside the premises or within a reasonable distance beyond.

There was no duty upon Yacht Haven Hotel or the other defendants to inspect the police logs. No evidence illustrates that all the incidents reported in the log as "Yacht Haven" actually happened at the hotel or were reported to Yacht Haven, or that the alleged "Yacht Haven" assailant or perpetrator was other than a guest of the hotel. Hence, plaintiff has produced no evidence that the defendants knew of some crime condition, other than general crime possibilities, and failed to warn.

Specifically, she has not produced any evidence that reasonably support a finding that Yacht Haven Hotel was on actual notice by reason of past similar incidents occurring to tourists in an area as to which it had obligation to protect its patrons—such that the hotel was aware that special precautions for their patrons were necessary. Plaintiff had been warned by defendants about general crime. It was general crime that she appreciated existed in St. Thomas and it was general crime that victimized her.

ered with tall overgrowth.

Finally, the newly submitted evidence also fails to address the liability of MLT, the tour operator. A tour operator, has no duty to inquire about crime at the Yacht Haven Hotel or the tour destination in general. *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 390 (7th Cir.1989). Similarly, it does not owe a duty to warn tourists as to general safety precautions. *Semmelroth v. American Airlines,* 448 F.Supp. 730, 733 (E.D.Ill.1978).

Plaintiff has produced no evidence that Yacht Haven Hotel informed MLT of any crime problem at that location. MLT has produced deposition evidence that it did make inquiries of the Chamber of Commerce hotels and other tour operators about St. Thomas as a suitable vacation site and had received no advice that Yacht Haven was not suitable for the intended trip purposes. In short, MLT had no specific warning about specific crime conditions in or around Yacht Haven Hotel and, therefore, it cannot be held liable for Manahan's injuries.

Accordingly, plaintiff's motion for reconsideration is DENIED.