Carolyn J. HONEYCUTT, Plaintiff,

v.

TOUR CARRIAGE, INC., Mann Travels,
and Go Tour Incorporated,
Defendants.

No. 5:95CV134–MCK.

United States District Court,
W.D. North Carolina,
Statesville Division.

March 18, 1996.

Deborah Brinton, Mooresville, NC, for Carolyn J. Honeycutt, plaintiff.

Mark A. Ash, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for Tour Carriage, Inc., defendant.

Richard T. Rice, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, Rodney E. Gould, Craig S. Harwood, Rubin, Hay & Gould, P.C., Framingham, MA, for Edsil Limited, GOGO Tours, defendants.

## ORDER

McKNIGHT, United States Magistrate Judge.

**THIS MATTER** is before the undersigned pursuant to 28 U.S.C. § 636(c) for disposition of Defendants' Mann Travels and GOGO Tours, Inc., motion to dismiss or for summary judgment and brief and affidavits in support (docs.2, 3, 4, 5) and Defendant Tour Carriage's motion to dismiss for lack of personal jurisdiction and brief and affidavit in support (docs. 9, 10, and 11). Plaintiff has failed to file a response within the time allowed. These motions are ripe for disposition.

## FACTS[1]

Plaintiff alleges that on March 21, 1995 she broke her ankle during a five-day vacation trip to the Copper Canyon in Mexico that she booked through Mann Travels. She claims her injury occurred when the horse she was riding stumbled. Plaintiff alleges that on March 21, 1995, Yves I. Defreyn with Tour Carriage offered a horseback ride to the tour group with assurance to Plaintiff that the horses and activity were safe and that Defreyn would accompany them on the ride. She alleges that the moving defendants were negligent because the defendant Tour Carriage, an independent company that provided groundhandling services to the tour, told her, through Defreyn, that the horseback ride was not dangerous, and because inadequate provisions had been made to treat an injury during the horseback riding trip.

Defendants GOGO Tours and Mann Travels have submitted affidavits (docs.2, 5) which establish the following facts: GOGO Tours is a New Jersey tour operator/wholesaler of

package vacation tours. Cowlan Aff., para. 1. It sells vacation tour packages through independent retail travel agencies such as the defendant Mann Travels and through GOGO Tours' affiliated corporation, Liberty Travel, Inc. *Id.*

GOGO Tours was the tour operator of the "Copper Canyon" tour. *Id.*, para. 2. The tour included a ground tour package operated by Tour Carriage, Inc., d/b/a Signa Tours, of Phoenix, Arizona (Tour Carriage), as well as round-trip air transportation to Phoenix. *Id.* The Copper Canyon tour did *not* include the horseback riding excursion into the Copper Canyon in Mexico during which Plaintiff alleges she broke her ankle. *Id.* Apparently, Plaintiff decided to take the horseback riding excursion from a local entity which had nothing to do with the tour during her free time while the tour was at the Copper Canyon in Mexico. *Id.*

GOGO Tours does not now and did not at the time of the Plaintiff's tour, March 1995, own, operate, manage, control, supervise, have the right to do so, or own stock in Tour Carriage. *Id.*, para. 4. It does not employ Yves Defreyn of Tour Carriage. *Id.* Rather, Tour Carriage is completely independent of GOGO Tours. *Id.* GOGO Tours does not own, operate, manage, or control the horseback riding excursion upon which Plaintiff bases her lawsuit but which she has failed to name as a party to this lawsuit or even to identify in her Complaint. *Id.* GOGO Tours was not even aware that there was such a horseback riding service in the Copper Canyon and, hence, GOGO did not even mention it in its brochure. *Id.* and Exh. A.

GOGO Tours has been marketing tours operated by Tour Carriage since September 1994. *Id.*, para. 5. Before it began marketing Tour Carriage packages, it knew that Tour Carriage enjoyed a strong reputation in the industry for providing safe and reliable local tour services. *Id.* Before Plaintiff's Copper Canyon tour, GOGO Tours had sold approximately ten Tour Carriage "Copper Canyon" tour packages through travel agencies such as Mann Travels. *Id.*, para. 6. To

---

1. Because Plaintiff did not respond in opposition to any of the motions filed by Defendants, the undersigned finds the facts as presented by Defendants.

date, GOGO Tours had sold approximately 40 Tour Carriage "Copper Canyon" tours. *Id.* It has found Tour Carriage to be safe and reliable. *Id.* The tour participants and GOGO were very pleased with the services provided by Tour Carriage. *Id.* Other than Plaintiff, GOGO Tours has had no reports of Tour Carriage providing purportedly inaccurate advice about any activities tour participants might choose to engage in during free time during a tour. *Id.* Tour participants and travel agencies have not reported to GOGO Tours that tour participants have been injured during the Copper Canyon tour, including during activities that are not part of the tour such as horseback riding excursions. *Id.* In fact, until it received the Plaintiff's Complaint, Tour Carriage did not even know that a horseback riding excursion was available in the Copper Canyon. *Id.* Plaintiff was the first tour participant to notify GOGO that she had bought such an excursion. *Id.*

The terms and conditions, or contract, governing this tour was printed inside the back cover of the 1995 GOGO Tours brochure. *Id.,* para. 7 and Exh. B thereto. The contract states expressly that GOGO tours and its agents, which would include a travel agency such a Mann Travels, are not liable for any negligence by a supplier of services to the tour such as Tour Carriage:

> RESPONSIBILITY: *GOGO TOURS, INC .... and/or their agents* and offices [sic] and/or suppliers of services pursuant to or in connection with these itineraries shall *act only as agents for the passenger in making arrangements for hotels, transportation, restaurants, or any other service and does not assume any liability whatsoever for any injury,* damage, death, loss, accident or delay *to person* or property *due to an act of negligence of or default of any hotel, carrier, restaurant, company or person rendering any of the services included in the tour, or by act of God.* Further, *no responsibilities are accepted for* any damage or delay due to sickness, pilferage, labor disputes, machinery breakdown, quarantine, government restraints, weather *or other causes beyond their personal control....*

*Id.* and Exh. B thereto (underlining added).

GOGO Tours does not make any representations about the reliability or safety of any independent services or vendors that tour participants might encounter or learn about at the tour destinations, and GOGO Tours certainly does not guarantee the safety or reliability of such services. *Id.,* para. 9.

Mann Travels is a retail travel agency with its headquarters and principal place of business in Charlotte and 11 offices in the Charlotte area. Widis Aff., para. 1. On or about February 21, 1995 Mann Travels sold Plaintiff the Copper Canyon tour on which she bases her lawsuit. *Id.,* para. 2. Mann Travels did not select the tour for her or make any representations about it. *Id.* It simply booked the tour at her request and gave her a copy of the page from the GOGO Tours brochure describing the tour. *Id.* Mann Travels has never owned, operated, managed, controlled, supervised, had the right to do so, or owned stock in GOGO Tours or Tour Carriage. *Id.,* para. 5. Mann Travels simply sells GOGO Tours tour packages at retail, including Plaintiff's tour. *Id.* Mann Travels did not have any business relationship with Tour Carriage concerning Plaintiff's tour and has had no business relationship with Tour Carriage on any other matter. *Id.* Rather, GOGO Tours had contracted with Tour Carriage for groundhandling services in Arizona and Mexico. *Id.*

Mann Travels has never owned, operated, controlled, or supervised the unnamed horseback riding excursion in the Copper Canyon in Mexico. *Id.,* para. 6. In fact, Mann Travels did not even know that horseback riding excursions were available in the Copper Canyon. *Id.* The GOGO Tours brochure for this tour did not mention horseback riding excursions in the Copper Canyon. *Id.* and Exh. A thereto. Plaintiff did not ask Mann Travels about the availability of horseback riding in the Copper Canyon or at any other destination during the tour, and, accordingly, Mann Travels did not even discuss horseback riding during the tour with Plaintiff when she booked her trip or at any other time. *Id.*

Mann Travels makes no representations about the reliability or safety of known suppliers of services to tours, and does not guarantee the safety of its clients during a tour.

*Id.,* para. 7. GOGO Tours specifically disclaimed liability for any negligence on the part of suppliers of services to the tour such as Tour Carriage.

### APPLICABLE LAW

 Defendant Tour Carriage has moved to dismiss for lack of personal jurisdiction under Fed. Rule Civ. P. 12(b)(2), which governs motions to dismiss for lack of jurisdiction over a person. The burden of establishing personal jurisdiction rests with the party asserting it. See 2A *Moore's Federal Practice,* Par. 12.07[2.–2] at 12–55 (1990). However, if the court decides a motion to dismiss for lack of jurisdiction over a person without an evidentiary hearing based only on the written submissions of the parties, the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists. *Id.* at 12–56; see *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305, 1307 (4th Cir.1986); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985); *Wyatt v. Kaplan,* 686 F.2d 276 (5th Cir.1982).

Defendants Mann Travels and GOGO Tours have moved to dismiss, or alternatively, for summary judgment. Fed Rule Civ.P. 12(b) provides, in part: "If, on a motion asserting the defense numbered (6) for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Because Mann Travels and GOGO Tours have submitted affidavits in support of their motions, their motion to dismiss is converted to a motion for summary judgment.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving

party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see Fed.R .Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. *Matsushita,* 475 U.S. at 587–88; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587. There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. The mere possibility of a factual dispute is not enough. Where the defendant demonstrates after a reasonable period of discovery that the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his case, summary judgment should be granted. *Celotex,* 477 U.S. at 317.

### MANN TRAVELS AND GOGO TOURS' MOTION FOR SUMMARY JUDGMENT

 The horseback riding excursion was not part of the GOGO Tours package, and

Plaintiff does not allege that it was. Neither GOGO Tours nor Mann Travels has ever owned, operated, controlled, managed, or supervised the operator of the horseback riding excursion, and Plaintiff does not allege that they did. They did not even own, operate, control, manage, or supervise Tour Carriage, employer of Mr. Defreyn, and Plaintiff does not allege they did. Plaintiff seeks to convert Mr. Defreyn's "assurance" that the horseback riding excursion was "not dangerous" into a guarantee of her safety under which GOGO Tours and Mann Travels are liable.

In *Barber v. Princess Hotels. Int'l., Inc.,* 134 A.D.2d 312, 520 N.Y.S.2d 789, 789–90 (1987), Barber sued the hotel she was staying at in Acapulco for negligence when she was thrown from a horse during a riding excursion. *Id.* at 789. Because, as in the instant case, the horseback riding activity was run by local Mexican residents, not by the hotel, and the hotel merely mentioned, in the hotel brochure, its availability to guests, *id.,* the court granted summary judgment to the hotel on Barber's negligence claim. *See also Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578, 585 (E.D.Pa.1985) (tour operator and travel agency had no duty to warn tour participant of hazards of horseback riding at destination because they did not own or control the stable from which tour participant rented a horse, even though the tour brochure mentioned that horseback riding was available and listed the stable), *aff'd,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986).

As in *Barber* and *Tucker,* the fact that GOGO Tours and Mann Travel did not operate or control the horseback riding activity is alone sufficient grounds for this Court to grant summary judgment in their favor. *See also McDermott v. Travellers Air Services, Inc.,* 462 F.Supp. 1335, 1341 (M.D.Pa.1978) (tour operator not liable for tour guide's alleged treatment of tour participant where it did not employ or control the tour guide).

Further, unlike the facts in *Barber* and *Tucker,* here neither Mann nor GOGO Tours knew anything about a horseriding excursion into the Copper Canyon. *See* Cowlan Aff., para. 4; Widis Aff., para. 6. The GOGO Tours brochure did not even mention horseback riding in the canyon. *Id.*

If Plaintiff, having chosen to take the horseriding excursion, saw that the terrain was steep or the horses unfit, she presumably could have asked to leave the excursion. Because Plaintiff was in a far better situation to assess the situation she was in than GOGO Tours and Mann Travels, they had no duty to warn her of a danger she could have observed but about which they knew nothing. *See Manahan v. NWA, Inc.,* 821 F.Supp. 1105, 1109 (D.V.I.1991) (tour operator could not be held liable for allegedly erroneous advice of hotel concierge/groundhandler that street near hotel in St. Thomas was safe to walk since it was well-lighted because once plaintiff started walking the street where she was mugged, she was in best position to observe lighting of street and to assess it safety), *reconsideration denied,* 821 F.Supp. 1110, 1112–13 (D.V.I.1992), *aff'd* (3d Cir. 1993); *McCollum v. Friendly Hills Travel Center,* 172 Cal.App.3d 83, 217 Cal.Rptr. 919, 925–26 (1985) (travel agent held not liable for allegedly unsafe waterskiing conditions and equipment at hotel; if they were unsafe, it was incumbent on traveller to refrain from using them).

As an additional ground for summary judgment, the terms and conditions governing plaintiff's trip bar this action against GOGO Tours and Mann Travels. The Terms and Conditions provide:

RESPONSIBILITY: *GOGO TOURS, INC* . . . . *and/or their agents* and offices [sic] *and/or suppliers of services pursuant to or* in connection with these itineraries shall *act only as agents for the passenger in making arrangements for hotels, transportation, restaurants, or any other service and does not assume any liability whatsoever for any injury,* damage, death, loss, accident or delay *to person* or property *due to an act of negligence of or default of any hotel, carrier, restaurant, company or person rendering any of the services included in the tour, or by act of God.* Further, *no responsibilities are accepted for* any damage or delay due to sickness, pilferage, labor disputes, machinery breakdown, quarantine, government restraints,

whether *or other causes beyond their personal control.*

Cowlan Aff., para. 7, and Exh. A to it.

 Courts have long held contractual disclaimers to be binding, particularly where, as here, the disclaimer clearly and unequivocally alerts the tour participant to the limitation. Indeed, in *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the United States Supreme Court confirmed that limitation of liability provisions are enforceable even though they appear in pre-printed tickets and brochures and were not the product of bargaining between a tour operator and a tour participant. *See also Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44 (2d Cir.1990) (granting cruise line summary judgment based on provision in standard form ticket requiring suits to be brought in one year); *Hodes v. S.N.C. Achille Lauro ed Altri–Gestione,* 858 F.2d 905, 912 (3d Cir.1988), *cert. dismissed,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989) (a standard form ticket disclaimer barred plaintiffs' claim, even though the ticket had been held by their travel agent, because they were "charged with notice of the ticket provisions"); *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 864 (1st Cir.1983) (upholding printed terms and conditions requiring notice of claims and lawsuits to be filed within certain time periods, even though the operative language was incorporated within 10 pages of "small but legible type"); *McQuillan v. "Italia" Societa Per Azione Di Navigazione,* 386 F.Supp. 462 (S.D.N.Y.1974), *aff'd,* 516 F.2d 896 (2d Cir. 1975) (defendant's motion for summary judgment should be granted based upon limitation in passage contract); *Shannon v. Norwegian Caribbean Lines,* 640 F.Supp. 373, 375 (M.D.Pa.1985) ("It is no defense [to contractual provisions contained in the contract of passage] that the passenger did not read the ticket."); *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 234 (2d Cir.1978) (affirming trial court's enforcement of an air carrier's form disclaimer for all losses not caused by its own negligence).

Federal and state courts throughout the country, including the Courts of Appeals for the Third, Sixth, Seventh and Eighth Circuits, have held uniformly that tour operators simply are not liable for the negligent acts of third-party suppliers of services to tours. This uniformity of opinion exists even when, unlike here, the tour operator has not, in a writing, disclaimed liability for the actions of independent suppliers of services to the tour.

 For example, Tour operators are not liable for the negligence of independent groundhandlers or tour guides. Some of the leading cases on the liability of tour operators arose from alleged negligence of independent companies supplying ground services to the tour such as side excursions or guide services. Courts routinely hold that a tour operator like GOGO Tours is not liable for the alleged negligence of a company like Tour Carriage. *See, e.g., Manahan v. NWA, Inc.,* 821 F.Supp. 1105 (D.V.I.1991), *reconsideration denied,* 821 F.Supp. 1110 (D.V.I. 1992), *aff'd,* (3d Cir.1993) (court granted tour operator's motion for summary judgment, holding that it was not liable for the arguably negligent advice of tour groundhandler regarding safety of walking to restaurant); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332 (N.D.Ga.1981) (tour operator not liable for injuries the plaintiff suffered when she fell on a rocky beach during an optional shore excursion from a ship). *See also Connolly v. Samuelson,* 671 F.Supp. 1312, 1317–18 (D.Kan.1987) (while on an optional walking trip through the jungle during a tour, plaintiff slipped on rocks in a stream and was injured; defendant tour operator arranged the safari but did not own the lodges or local guide operations; relying both on common law principles and an exculpatory clause similar to the one at bar, court granted summary judgment to the tour operator, rejecting plaintiff's negligence and contract theories); *McDermott v. Travellers Air Services, Inc.,* 462 F.Supp. 1335, 1341 (M.D.Pa.1978) (tour operator not liable for acts of local tour guide who was neither its direct employee nor under its exclusive control).

 Courts have also found that tour operators are not liable for the negligence of suppliers of other kinds of services to tours. The same reasoning and the same results obtain in cases in which tour participants

attempt to hold tour operators liable for harm they suffer as a result of the claimed negligence of suppliers of other kinds of services to the tours, such as transportation services and accommodations. *See, e.g., Dorkin v. American Express Co.,* 74 Misc.2d 673, 345 N.Y.S.2d 891 (1973), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190 (1974).[2]

Plaintiff's attempt to hold moving defendants liable for the injuries she suffered in the horseback riding accident is without support in case authority. Plaintiff has presented no theory under which GOGO Tours and Mann Travels guaranteed a trip free of harm caused by third parties. Case authority presented by Defendants is persuasive. *See, e.g., Raskin v. Ulysses Lines, Inc.,* No. 79 Civ. 4275 (S.D.N.Y. Sept. 10, 1980) (Exh. C to doc. 4) ("Defendant agreed to arrange a tour and supply a ticket to plaintiff; it did not insure her safety aboard the vessel."); *Dorkin v. American Express Co.,* 74 Misc.2d 673, 345 N.Y.S.2d 891, 893–94 (1973), *aff'd,* 43 A.D.2d 877, 351 N.Y.S.2d 190, 192 (1974) (tour operator "did not guarantee a good time . . . nor that plaintiffs would return safely without adverse adventure or harm"; "Defendant agreed to supply plaintiffs with a planned European tour with meals, lodging and transportation. It did not, however, insure the safety of plaintiff. The disclaimer in the tour contract negates any intent of defendant to assume a contractual obligation for such safety."); *Weiner v. British Overseas Airways Corp.,* 60 A.D.2d 427, 401 N.Y.S.2d 91, 95 (1978) (even absent a specific disclaimer, tour operators have no obligation to insure the safety of services provided by suppliers of services to tour).[3]

Indeed, even if the description of the Copper Canyon tour in the GOGO Tours brochure had mentioned the safety or reliability of Tour Carriage or any other suppliers of services to the tour—which it did not; *see* Cowlan Aff., para. 9, and Exh. A to it; Widis Aff., para. 7—courts uniformly do not consider such language to be a warranty that no harm will befall tour participants. As the Seventh Circuit held in *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 391 (7th Cir. 1989):

> The brochure language relied upon by the Wilsons (focusing on the "relaxed informality" of a Cayman Island vacation . . .) is mere "puffing". The language is not a guarantee of safety, and does not constitute affirmative conduct giving rise to a duty to investigate and warn.

In sum, GOGO Tours did not guarantee plaintiff freedom from harm during her tour. GOGO Tours specifically disclaimed that it would guarantee the safety of any of the suppliers (or non-suppliers) of services to the tour. As the court noted in *Lavine,* "There is a fallacy, which seems to be popularly accepted, that for any personal injury, however caused, some person should be liable in damages. Such is not and never has been

---

**2.** "American Express Company did not guarantee a good time . . . nor that plaintiffs would return safely without adverse adventure or harm. It could not be charged with foreseeability of possible motor bus accident and resulting injury. The defendant did what it contracted to do and does not have to respond in damages either in negligence or for breach of contract, based on principles of agency." 74 Misc.2d at 674–75, 345 N.Y.S.2d at 894. And further on appeal, the court stated: "Defendant agreed to supply plaintiffs with a planned European tour with meals, lodging and transportation. It did not, however, insure the safety of plaintiff. The disclaimer in the tour contract negates any intent of defendant to assume a contractual obligation for such safety." 351 N.Y.S.2d at 192.

**3.** *See also, Ross v. Trans. Nat'l. Travel,* Civil Action No. 88–1763–Z, 1990 WL 79229, 1990 U.S.Dist. LEXIS 6994 (D.Mass.1990) (Exh. A) ("Defendant organized and arranged for the tour but did not agree to guarantee plaintiff's safety and therefore breached no duty in failing to do so."); *Hassett v. Cape Cod Bicycle Tours, Inc.,* Civil Action No. 87–0016–Z, 1987 WL 17540, 1987 U.S. Dist. LEXIS 8321 (D.Mass.1987) (Exh. K) ("[Tour operator's] only duty . . . was to make the necessary reservation; defendant did not agree to ensure plaintiff's safety and therefore breached no duty in failing to do so."); *Accomando v. Trans Nat'l Travel,* 23 Av. Cases 18,140, 18,142 (CCH), slip. op. (Suffolk Cty., Mass.Super.Ct., June 19, 1991) (Exh. E) (language in tour brochure referring to charter air carrier's operating at "the highest maintenance and operational standards . . . provided only general statements which were 'mere puffings,' not guarantees"); *Gannon v. International Weekends Charter Vacations, Inc.,* slip op., Civ. No. 87–315 (Suffolk Cty., Mass., Super.Ct., Dec. 16, 1987) (Exh. B) ("[Tour operator] had no duty to ensure plaintiff's safety while he was travelling on a third party carrier.").

the law." 519 F.Supp. at 337. This observation is applicable to the facts of the instant case.

■ Even if Plaintiff had alleged in her complaint that defendants GOGO Tours and Mann Travels should be held liable on the theory that they failed to exercise due care in choosing Tour Carriage, Plaintiff's claim would fail. The duty of tour operators and travel agents to investigate the quality of suppliers of services is well-defined. A tour operator may rely initially on the general reputation of the supplier and may continue to offer the services of the supplier where its experience with the supplier has been satisfactory. *See, e.g., Wilson v. American Trans Air, Inc.*, 874 F.2d 386 (7th Cir.1989); *Fling v. Hollywood Travel and Tours*, 765 F.Supp. 1302 (N.D.Ohio 1990), *aff'd*, 933 F.2d 1008, 1991 WL 88412 (6th Cir.1991).[4]

■ The affidavits submitted by Defendants establish that GOGO Tours started using Tour Carriage to supply ground services because it knew that Tour Carriage enjoyed a solid reputation. Similarly, Mann Travels began booking its clients on tours sold by GOGO Tours because it knew that GOGO was a well-regarded tour operator. Mann Travel has booked 1,500 passengers a year on tours sold by GOGO Tour in each of the last several years. Mann Travel and its clients have been pleased with GOGO Tours vacations. Likewise, GOGO Tours and its clients have been satisfied with Tour Carriage and its "Copper Canyon" tour, including those tour participants who had been on the tour before Plaintiff.

GOGO has sold 40 Tour Carriage Copper Canyon tours to date and had sold approximately ten before Plaintiff's trip. Cowlan Aff., para. 6. All tour participants except Plaintiff have been satisfied with the tour. *See id.* None have claimed that Tour Carriage failed to give them sound advice and none have reported that they suffered an injury during the tour or during any side excursion not included in the tour, such as a horseback riding excursion. *Id.* In fact, until they received Plaintiff's complaint, GOGO Tours and Mann Travels were not even aware that a horseback riding excursion was available in the Copper Canyon. *Id.;* Widis Aff., para. 6.

Before GOGO Tours began marketing Tour Carriage packages, it knew that Tour Carriage enjoyed a strong reputation in the industry for providing safe and reliable tour services. Cowlan Aff., para. 5. Tour Carriage has proven to be a safe and reliable tour operator in GOGO Tours' extensive experience with it. *Id.*, para. 6.

Mann Travels has been booking tours with GOGO Tours for the past ten years. Widis Aff., para. 8. Before it started booking GOGO Tours, Mann Travels knew that GOGO enjoyed a very good reputation in the travel industry as a tour operator. *Id.* In the last few years, Mann Travels has booked some 1,500 clients a year on tours operated by GOGO Tours. *Id.* It has found GOGO Tours to be very reputable and very reliable. *Id.*

Under these facts, GOGO Tours has satisfied the only duties the law imposes on a tour operator in selecting the operator of a ground tour, and Mann Travels has satisfied the only duty it owed Plaintiff in booking her tour. In short, Plaintiff's allegation that she suffered harm on an independently owned, operated, managed, and controlled horseback riding excursion (which was not even part of

---

4. In *Wilson*, an assault case, the Seventh Circuit held that a tour operator has "no duty to make specific inquiries into guest safety or security at the [hotel]." 874 F.2d at 391. In *Fling*, the Sixth Circuit upheld the district court's finding that a tour operator had no duty further to investigate the destination of a vacation tour or to warn travellers of any dangers there, 765 F.Supp. at 1305–06, and could not be held liable for a mugging at a hotel because it had investigated the hotel briefly before using it, had booked a large number of tour participants there, and had had no reports of similar incidents. *Id.* at 1306–07.

*See also Stafford v. Intrav, Inc.*, 841 F.Supp. 284, 288 (E.D.Mo.1993), *aff'd*, 16 F.3d 1228, 1994 WL 5657 (8th Cir.1994); *Manahan v. NWA, Inc.*, 821 F.Supp. 1105, 1109–10 (D.V.I.1991) (summary judgment granted tour operator in mugging case on claim that it was negligent in selecting a hotel in an allegedly dangerous neighborhood in St. Thomas, since tour operator had no actual knowledge of any such previous attacks), *reconsideration denied*, 821 F.Supp. 1110, 1113–14 (D.V.I.1992), *aff'd* (3d Cir.1993).

the tour but which she alleges the independently owned, operated, managed, and controlled local groundhandler, Tour Carriage, told her was not dangerous), is insufficient to support a finding that the tour operator could be liable for having negligently selected the supplier. Plaintiff has offered no evidence to rebut the affidavit of Richard Cowlan that Tour Carriage has proven wholly reliable in GOGO's experience with it, or to rebut the affidavit of Larry Widis that Mann Travels and its clients have been satisfied with GOGO Tours.[5]

Defendants GOGO Tours and Mann Travels cannot be held liable under any theory for the putative negligence of Tour Carriage, the independent groundhandler, in allegedly telling plaintiff that the unnamed horseriding excursion in Mexico was not dangerous, or for any negligence of the operator of the horseback riding excursion. Accordingly, the undersigned finds that there are no questions of material fact which preclude entry of summary judgment in favor of GOGO Tours and Mann Travels.

### TOUR CARRIAGE'S MOTION TO DISMISS

Because none of the negligent acts alleged by Plaintiff in her complaint occurred in North Carolina, the only provision of the North Carolina Long–Arm Statute relevant to the instant case is § 1–75.4, which provides for in personam jurisdiction over a nonresident defendant who "Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C.Gen.Stat. § 1–75.4.

There is a clear mandate that the (North Carolina) long-arm statute be given liberal construction, thereby favoring a finding of personal jurisdiction. *Vishay Intertechnology, Inc. v. Delta Int'l. Corp.*, 696 F.2d 1062 (4th Cir.1982). Regardless of the statutory ground, a court cannot expand the permissible scope of state jurisdiction over nonresident parties beyond due process limitations. There must be a showing that the defendant has sufficient minimum contacts with North Carolina. *Speizman Knitting Mach. Co. v. Terrot Strickmaschinen*, 505 F.Supp. 200 (W.D.N.C.1981). The criteria for determining whether minimum contacts exist include: (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state and convenience, and (5) whether the defendant invoked benefits and protections of law of the forum state. *Southern Case, Inc. v. Management Recruiters Int'l. Inc.*, 544 F.Supp. 403 (E.D.N.C.1982).

A single contract executed in North Carolina or to be performed in North Carolina may be a sufficient minimal contact in which to base personal jurisdiction. *Byrum v. Register's Truck & Equip. Co.*, 32 N.C.App. 135, 231 S.E.2d 39 (1977). If a contract is to be actually performed in North Carolina and has a substantial connection with this State, jurisdiction will lie. *Staley v. Homeland, Inc.*, 368 F.Supp. 1344 (E.D.N.C. 1974). Plaintiff has the burden of establishing personal jurisdiction over Defendant.

In *Uniprop Manufactured Housing Communities Income Fund II v. Home Owners Funding Corp. of America*, 753 F.Supp. 1315 (W.D.N.C.1990), the court noted that

> Several North Carolina courts have deemphasized the determination of whether minimum contacts exist. The North Carolina long-arm statute extends to the outer bounds of due process, making analysis under the statute and the due process clause one and the same. See *FDIC v. British–American Corp.*, 726 F.Supp. 622, 629 (E.D.N.C.1989); *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C.1988) (holding that long-arm

**5.** Cf. *Stafford v. Intrav. Inc.*, 841 F.Supp. 284, 288 (E.D.Mo.1993), aff'd, 16 F.3d 1228, 1994 WL 5657 (8th Cir.1994) (granting tour operator summary judgment where plaintiff failed to counter tour operator's affidavits showing it had used due care in selecting supplier of services to tour); *Klinghoffer v. S.N.C. Achille Lauro*, 816 F.Supp. 934, 936–37 (S.D.N.Y.1993) (same); *Hassett v.*

*Cape Cod Bicycle Tours, Inc.*, Civil Action No. 87–0016–Z, slip. op. at 2, 1987 WL 17540 at *1, 1987 U.S.Dist. LEXIS 8321 (D.Mass.1987) (summary judgment for tour operator where plaintiff failed to show that tour operator should have known supplier was allegedly unreliable) (Exh. K to doc. 4).

statute "[m]akes available to North Carolina courts the full jurisdictional powers permissible under federal due process ... [W]hen a plaintiff relies on (the statute), the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process."); *cf. Western Steer–Mom 'N' Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 264 (W.D.N.C.1984). Thus, given the liberal construction of the North Carolina long-arm statute, the prevailing law in North Carolina presumes the existence of in personam jurisdiction. *Southern Case, Inc. v. Management Recruiters International, Inc.,* 544 F.Supp. 403, 405 (E.D.N.C.1982). It is unclear to the Court whether these cases completely eliminate the need to determine whether minimum contacts with the forum state exists. It does appear to the Court that the Eastern District of North Carolina is correct in concluding that analysis under the long-arm statute and the due process clause is one and the same since the statute extends to the outer bound of due process.

*Uniprop Manufactured Housing Communities Income Fund II v. Home Owners Funding Corp. of America,* 753 F.Supp. at 1320.

■ The Supreme Court recognizes two tests for determining whether a defendant's contacts satisfy the requirements of due process. If the cause of action did not arise in or is unrelated to the defendant's activities in the forum state, then the appropriate standard is the "continuous and systematic" test set forth in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, if the cause of action either arose in or is related to defendant's activities in the forum state, the lesser burden of showing that defendant purposefully directed its activities toward the forum state applies. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under the facts of the complaint, the undersigned finds that the second test applies in the case at hand.

■ Defendant Tour Carriage has submitted the affidavit of Lynn McAlpin, Vice President of Tour Carriage, Inc., in support of its motion to dismiss for lack of personal jurisdiction (docs. 9, 10, 11). The affidavit establishes the following facts, uncontested by Plaintiff.

Tour Carriage is an Arizona corporation with its headquarters and principal place of business in Phoenix, Arizona. It has ten employees. (Aff. of McAlpin, ¶ 3). Tour Carriage is a motor coach company and tour operator. (*Id.* at ¶ 4.) It never has been registered to do business in North Carolina, does not do business in the State of North Carolina, and has never had any business relationship with any individual or entity in the State of North Carolina. (*Id.* at ¶ 5.) It has no employees, offices, telephone listings or mailing addresses in North Carolina, and has never solicited or sold services directly in North Carolina. (*Id.*).

GOGO Tours is a New York corporation with its headquarters and principal place of business at 69 Spring Street, Ramsey, New Jersey. It is a tour operator/wholesaler of package vacation tours. It sells vacation tour packages through independent retail travel agencies such as the defendant Mann Travels. (Cowlan affidavit, doc. 4).

Tour Carriage contracted with GOGO Tours and agreed to provide ground tour services for the "Copper Canyon" tour in Mexico. (Aff. of McAlpin, ¶ 6.) The ground tour included motor coach transportation, five nights' accommodations, tour guide services, and other amenities. (*Id.*) The brochure issued by GOGO Tours describing the "Copper Canyon" tour does not even mention Tour Carriage (Cowlan affidavit, doc. 4). Tour Carriage took no action to solicit the Plaintiff's business and, in fact, had no communication with the Plaintiff prior to her arrival in Phoenix for the commencement of the "Copper Canyon" tour. (Aff. of McAlpin, ¶ 7.)

The undersigned finds that Plaintiff has failed to allege facts sufficient to establish this court's jurisdiction over Tour Carriage. The McAlpin affidavit establishes that Defendant has no contacts with the State of North Carolina. Tour Carriage has never maintained a presence in this state, never invoked

the protection of the laws of this state, and took no action to solicit Plaintiff's business in this state. Plaintiff has failed to demonstrate any contacts by Defendant Tour Carriage with North Carolina, far short of the "continuous and systematic" contact required under the Due Process clause for this court to assert personal jurisdiction over Tour Carriage. Accordingly, Plaintiff has failed to establish the requisite minimum contacts with the State of .North Carolina such that maintenance of the instant suit against Tour Carriage would not offend due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); N.C.Gen.Stat. § 1–75.4.

 Even if the court were to find personal jurisdiction over Tour Carriage, it is likely that Plaintiff's claim would be subject to dismissal under Rule 12(b)(6). In *Tucker v. Whitaker Travel, Ltd.,* 620 F.Supp. 578, 585 (E.D.Pa.1985), *aff'd,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986), the trial court held that the fact that the tour operator's brochure mentioned that horseback riding was available in the Bahamas, listed stables from which one could rent horses, and stated that riding was "refreshing" did not amount to a guarantee of tour participants' safety in renting a horse from one of the stable listed. The court held, "The statements in defendants' advertisements cannot reasonably be interpreted to warrant plaintiffs' safety if they were to go horseback riding in the Bahamas." *Id.* at 586. The court also held that the statement that horseback riding is "refreshing" did not negligently misrepresent the activity as safe since such statement are at most opinions or descriptions. *Id.*

Accordingly, Plaintiff's claim against Tour Carriage on the basis of any alleged comment by Yves Defreyn to the effect that the horseback excursion was "not dangerous" must fail, since such a statement was at most a description or opinion, not a representation or warranty. *See also Manahan v. NWA, Inc.,* 821 F.Supp. 1105, 1109 (D.V.I.1991) (groundhandler's statement that road was well-lit and safe for plaintiff to walk on at night was not a guarantee that plaintiff would not be assaulted), *reconsideration denied,* 821 F.Supp. 1110 (D.Vi.1992), *aff'd,* (3d Cir.1993); *Stafford v. Intrav. Inc.,* 841 F.Supp. 284, 288 (E.D.Mo.1993) (there is no warranty of safety for a tour where the tour brochure does not contain an explicit warranty and plaintiff does not allege any other facts from which a warranty might be inferred), *aff'd* 16 F.3d 1228, 1994 WL 5657 (8th Cir.1994); *Klinghoffer v. S.N.C. Achille Lauro,* 816 F.Supp. 934, 936 (S.D.N.Y.1993) (same); *Lavine v. General Mills, Inc.,* 519 F.Supp. 332, 336, 338 (N.D.Ga.1981) ("Even if it were made, a general promise that the trip would be 'safe and reliable' does not constitute a guarantee that no harm would befall plaintiff"); *Semmelroth v. American Airlines,* 448 F.Supp. 730, 733 (E.D.Ill.1978) (tour operators are not insurers of the health and safety of tour participants); *Connolly v. Samuelson,* 671 F.Supp. 1312, 1317 (D.Kan. 1987) ("[tour operator] had no duty to provide plaintiff with a safe and secure tour").

## CONCLUSION

The undersigned finds that there are no questions of material fact which preclude the entry of summary judgment in favor of Defendants Mann Travel and GOGO Tours. Accordingly, Defendants are entitled to a summary judgment dismissing Plaintiff's complaint. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see* Fed. R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

Further, the affidavit submitted by Tour Carriage establishes that this court lacks personal jurisdiction over it. Plaintiff has not responded in opposition to the proof presented by Defendant. It is Plaintiff's burden to establish the court's jurisdiction over a defendant, and Plaintiff has failed to make even the minimum prima facie showing required when the court is deciding a motion on written submissions. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). According-

ly, Tour Carriage's motion to dismiss will be granted.

Based upon the foregoing, the undersigned **ORDERS** that Defendants' Mann Travel and GOGO Tours motion for summary judgment (doc. 2) be **GRANTED;** and that Tour Carriage's motion to dismiss (doc. 9) be **GRANTED.** Judgment for Defendants will be entered contemporaneously with this Order.