UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

TRINA MARLENE YATES,
Administratix of the Estate of
Thomas Yates,

*Plaintiff-Appellee,*

v.

MOTIVATION INDUSTRIAL EQUIPMENT
LIMITED,

*Defendant-Appellant.*

No. 01-1938

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
H. Brent McKnight, Magistrate Judge.
(CA-99-337-3-MCK)

Argued: January 22, 2002

Decided: June 20, 2002

Before WILKINSON, Chief Judge, and MOTZ and
GREGORY, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion. Chief
Judge Wilkinson wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Paul Christopher Lawrence, HEDRICK, EATMAN,
GARDNER & KINCHELOE, L.L.P., Charlotte, North Carolina, for
Appellant. John Joseph Korzen, ANDERSON, KORZEN & ASSO-

CIATES, P.C., Kernersville, North Carolina, for Appellee. **ON BRIEF:** Terry L. Wallace, HEDRICK, EATMAN, GARDNER & KINCHELOE, L.L.P., Charlotte, North Carolina, for Appellant. Charles McB. Sasser, COX, GAGE & SASSER, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Motivation Industrial Equipment, Ltd. (Motivation), a Canadian corporation, appeals the district court's order denying its motion to dismiss for lack of personal jurisdiction. Because the record does not establish that Motivation had the necessary minimum contacts with North Carolina so as to comport with the requirements of due process, we reverse.

### I.

Thomas Yates, an employee of Polar Plastics Inc. (Polar), located in Mooresville, North Carolina, was fatally injured on July 18, 1997, when a gantry crane manufactured by Motivation collapsed and fell on him.[1] Trina Yates, as administratrix of her husband's estate, filed a wrongful death action against Motivation in North Carolina Superior Court on July 14, 1999, alleging negligence and breach of war-

---

[1] Motivation sold the crane to Metric Storage Systems (Metric), a Canadian corporation, knowing that Metric, in turn, would sell the crane to Polar, also a Canadian corporation. Sometime after the crane arrived at Polar's Canadian plant, Polar shipped the crane to North Carolina. However, Motivation had no knowledge that the crane was being shipped to North Carolina, and the record is void of any evidence indicating Motivation was even aware that Polar had a North Carolina plant.

ranties. Motivation, a corporation with its principal place of business in Canada, removed the case to federal district court in North Carolina on the basis of diversity of citizenship, *see* 28 U.S.C. § 1332(a), and moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. After allowing Yates additional time to conduct jurisdictional discovery, the magistrate judge, presiding by consent of the parties, found that the exercise of personal jurisdiction in this case was appropriate and denied Motivation's motion to dismiss. This appeal followed.

## II.

Yates contends, and the magistrate judge found, that Motivation is subject to the personal jurisdiction of the district court. We disagree. For the reasons that follow, we find that the district court's exercise of personal jurisdiction over Motivation exceeds the limits of due process and is therefore constitutionally impermissible.

Whether Motivation's contacts with North Carolina were sufficient to support the district court's exercise of personal jurisdiction is a question of law which we review *de novo. Christian Science Board of Directors of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). It is well established that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. *Id.* First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process requirements. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). Motivation does not separately contest that it is subject to North Carolina's long-arm statute, which has been construed to extend to the outer limits allowed by the Due Process Clause.[2] *See Hiwassee Stables, Inc. v. Cunningham*, 135

---

[2]N.C. GEN. STAT. § 1-75.4(4) states in part,

Local Injury; Foreign Act. — In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

N.C. App. 24, 27, 519 S. E. 2d 317, 230 (1999). Thus, the scope of our inquiry is simply whether North Carolina may, consistent with due process, exercise personal jurisdiction over Motivation. In other words, we must decide whether Motivation has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

We view the two species of personal jurisdiction, general and specific, through distinct lenses. *See generally ESAB Group v. Centricut*, 126 F. 3d 617, 623-24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416.

Yates has never claimed that Motivation's contacts with North Carolina are sufficiently continuous and systematic to subject Motivation to *general* personal jurisdiction in North Carolina. Here, as the district court duly observed, Motivation clearly was not engaged in "substantial" or "continuous and systematic" activities in North Carolina such as to subject it to general jurisdiction in the state. Thus, we need only determine whether Motivation's contacts were sufficient to subject it to specific personal jurisdiction in North Carolina.

### III.

This circuit has applied a three part test when evaluating the propriety of exercising specific jurisdiction: 1) whether and to what extent

---

b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade.

the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws, 2) whether the plaintiff's claim arises out of those forum-related activities, and 3) whether the exercise of jurisdiction is constitutionally "reasonable." *Nolan*, 259 F.3d at 215-16 (citing *Helicopteros*, 466 U.S. at 415-16, and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77 (1985)). For the reasons discussed below, Yates cannot satisfy this test.

A.

1.

Yates contends that the agency relationship between The Shannon Group, Inc. (Shannon) and Motivation proves that Motivation purposefully availed itself of the benefits and protections of North Carolina law. In 1994, Shannon, located in Goodlettsville, Tennessee, agreed to represent Motivation as its agent in Tennessee, North Carolina, South Carolina, Alabama, Georgia, and Florida.[3] The agreement was for an initial term of one year and would be automatically renewed for successive one year terms, unless either party gave notice to the other party two months prior to the expiration of the original term.

Robert Shannon, President of Shannon and the North Carolina sales agent for Motivation, stated in an affidavit that as part of the agreement with Motivation, the Shannon Group retained the right to represent other manufacturers. Shannon was not, nor has ever been an exclusive agent for Motivation. Furthermore, prior to July 18, 1997, the day of Thomas Yates' death, Shannon made *no sales* and received *no revenue* on behalf of Motivation from any entity in North Carolina. Yates offered no evidence to contradict Robert Shannon's representations.[4] There is no evidence in the record that Shannon took Motivation's brochures, products or sales materials to North Carolina. There

---

[3]In 1995, the contract was amended to exclude Florida and include Mississippi.

[4]Yates had over one year and ten months, the period of time between Motivation filing its motion to dismiss and the magistrate judge ruling on the motion, to depose Robert Shannon, but did not.

is also no evidence that Shannon made any solicitations in person or otherwise on behalf of Motivation in North Carolina. Yates offered no evidence that Shannon, as Motivation's agent, conducted any activities whatsoever in North Carolina. Motivation's agreement with Shannon therefore does not satisfy the first prong of the test for specific jurisdiction.

Our dissenting colleague suggests that hiring a sales representative for the forum state as part of a strategy of targeting this country and the particular state for increased sales would amount to purposeful availment, even if, as here, the agent was not an exclusive agent and no actions were taken by that agent on behalf of the company. We believe more is needed. However, even if we were to assume that the agency relationship in this case amounted to purposeful availment, because Thomas Yates' death did not arise from, or relate to in any way, Motivation's agency relationship with Shannon, the second prong of the test is not met.[5] Even if Yates had offered evidence that

---

[5]The district court found that Motivation conceded that Yates' claim arose out of or related to Motivation's activities in North Carolina. (J.A. 508). This finding was erroneous. Motivation merely conceded that the injury to Yates' decedent occurred in North Carolina.

In Motivation's supplemental brief in support of its motion to dismiss, Motivation stated:

> [I]n *Honeycutt*, this Court discussed the two tests set forth by the Supreme Court in determining whether defendant's contact satisfied the requirements of due process for the Court to assert jurisdiction and for the Plaintiff to establish a *prima facie* case of jurisdiction. If a cause of action did not arise in or is unrelated to the defendant's activity in the forum state, then the appropriate standard is the continuous and systematic test set forth in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (*i.e.*, general jurisdiction). If the cause of action either arose in or is related to the defendant's activities in the forum state, the lesser burden of showing the defendant purposely [sic] directed its activities toward the forum state applies. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 528 (1985). (*i.e.*, specific jurisdiction).
>
> In this case, since the *injury to the Plaintiff's Decedent occurred in North Carolina*, the *prima facie* burden the Plaintiff

Shannon took some actions on behalf of Motivation in North Carolina before Thomas Yates' death, there was no evidence presented that Shannon, or any other sales representative in the United States, was involved in the sale of the crane in any capacity. The sale of the crane had nothing to do with sales efforts in North Carolina, or sales efforts in the United States for that matter. The crane was sold in Canada, by one Canadian corporation to another Canadian corporation.[6]

---

needs to establish is that the Defendant purposely [sic] directed its activities toward the forum state. (emphasis added).

Defendant's Supp. Brief in Support of its Motion to Dismiss, 6.

As evidenced above, Motivation relied on *Honeycutt v. Tour Carriage, Inc.*, 997 F. Supp. 694, 704 (W.D.N.C. 1996). Unfortunately, *Honeycutt* misstates *Helicopteros*. In *Helicopteros*, the Supreme Court explained that a state exercises specific jurisdiction in a suit "*arising out of or related to* the defendant's *contacts with a forum*." 466 U.S. at 414, n.8. (emphasis added). It did *not* state that specific jurisdiction is conferred in cases simply because an injury occurs in that state, which is perhaps how *Honeycutt* could be read.

After citing *Honeycutt*, Motivation merely stated that because Thomas Yates' injury occurred in North Carolina, Yates needed to establish purposeful availment, i.e., specific jurisdictional analysis was proper. It never conceded that the cause of action arose out of its contacts with North Carolina. Whether the district court found a concession because it misread Motivation's statement, or because it accepted Motivation's (and *Honeycutt*'s) misapplication of the law, we are not bound by the misreading or the misapplication.

[6]In determining whether a claim arises out of forum-related activities, circuits have applied different tests. For example, the Ninth Circuit applies a "but for" test, where courts consider whether a plaintiff's claims would have arisen but for the defendant's contacts with the forum state. *See Doe I. v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). On the other hand, the Sixth Circuit does not require that "the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird v. Parsons*, 2002 WL 1012175, *7 (6th Cir. 2002). Even if we employ the less stringent Sixth Circuit test, the evidence before us establishes no substantial connection between the cause of action and any of Motivation's alleged in-state activities.

Yates also contends that Motivation purposely availed itself to North Carolina when it made two sales to North Carolina entities in 1998. Even if we were to find that these sales showed purposeful availment, Thomas Yates' death in 1997 simply could not arise from or relate to sales made in 1998, after his death.

2.

Motivation's general solicitation activities, separately *or taken as a whole*, likewise do not establish purposeful availment.[7] Its advertisements in the *Thomas Register* are not sufficient contacts. This circuit has held that a listing in the *Thomas Register*, a *nationally* distributed trade journal, is not enough to confer personal jurisdiction in a particular state. *Federal Insurance Co. v. Lake Shore Inc.*, 886 F. 2d 654, 659 (4th Cir. 1989). While Motivation placed advertisements in the *Thomas Register*, there is no evidence in the record that the advertisements were directed toward North Carolina residents, that North Carolina residents responded to them, or that Motivation sent any products to North Carolina as a result of them. Like the advertisements in the *Thomas Register*, Motivation's advertisement in *Crane Magazine* also does not show purposeful availment to North Carolina. There is no evidence in the record that the advertisement in *Crane Magazine* was directed toward North Carolina residents, or that inquiries or sales were generated from the advertisement. *See Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1046 (4th Cir. 1989).

The fact that Motivation operates a website likewise does not prove purposeful availment here. There is no evidence in the record to suggest, nor has Yates argued at any point, that the website is anything

---

[7]Motivation had a liability insurance policy with Commercial Union Assurance Company of Canada at the time of Thomas Yates' death. The policy covered Motivation if a liability suit was brought against it in the United States. Yates argues that Motivation is subject to personal jurisdiction in North Carolina because it owned an insurance policy that covered claims throughout the United States. We find this argument unpersuasive. Motivation neither directed activity toward North Carolina nor purposefully availed itself to North Carolina by merely purchasing this broad, nationwide insurance policy.

more than a "passive" website, where general information about Motivation is posted. *See Cybersell Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119 (W.D. Pa. 1997)). There is also no evidence in the record that any North Carolina entity purchased products from the website or purchased products because of the website.

Again, even if we were to assume that the advertisements or the website established Motivation's purposeful availment to North Carolina, it would strain credulity for us to find that Yates' claim somehow arose out of these contacts. Yates has offered no evidence that would establish even a tenuous link between the advertisements or the website and the death of her husband.

### B.

Yates contends that the district court could exercise specific jurisdiction over Motivation simply because Motivation manufactured the crane and did not limit its distribution of the crane so as to exclude North Carolina. We disagree. A "stream of commerce" theory of personal jurisdiction will not save Yates' case. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Motivation manufactured the crane in Canada and sold it to a Canadian sales representative, who in turn sold it to Polar, a Canadian corporation. The crane was initially delivered to Polar in Brampton, Ontario. There is simply no evidence in the record that Motivation was aware that the gantry crane at issue might be sent to or used in North Carolina. Polar, fortuitously, transported the crane to its North Carolina plant. The Supreme Court has rejected the application of a stream of commerce theory when, as here, the defendant delivers the product into the stream of commerce without any expectation that it would be purchased or used by a consumer in the forum state. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943 (4th Cir. 1994) (quoting *World-Wide Volkswagen*, 444 U.S. at 297-98). We find no evidence in the record to indicate that Motivation should have "reasonably anticipate[d] being haled into court" in North Carolina when it placed the crane into the stream of commerce in Canada. *World-Wide Volkswagen*, 444 U.S. at 297.

C.

Because Yates cannot show that Motivation "purposely availed" itself of the privileges of conducting activities in North Carolina or that her claims arise out of Motivation's North Carolina-related activities, we need not consider the third prong of the test for specific jurisdiction—whether jurisdiction would be reasonable.[8] *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.* 196 F.3d 284, 288 (1st Cir. 1999) (explaining that because an affirmative finding on each of the three elements is required to support a finding of specific jurisdiction, only "if the proponent's case clears the first two hurdles" must the court then analyze the overall reasonableness of an exercise of jurisdiction); *see also Doe I v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) (stating that the court need not reach the third prong of the specific jurisdiction test when plaintiff's evidence is insufficient to establish either purposeful availment or that the cause of action arises out of defendant's contacts with the forum).

IV.

On the facts and record set before us, Yates did not establish personal jurisdiction over Motivation in North Carolina. As such, we reverse and remand with instructions to dismiss for lack of personal jurisdiction.

*REVERSED AND REMANDED*

WILKINSON, Chief Judge, dissenting:

Trina Yates brought a wrongful death action after a Gantry crane manufactured by Motivation Industrial Equipment Limited collapsed on her husband and killed him. The question is whether a foreign cor-

---

[8]The overall reasonableness of whether jurisdiction would offend traditional notions of fair play and substantial justice, depends on several factors—1) the burden on the defendant, 2) the interests of the forum state, 3) the plaintiff's interest in obtaining relief in the forum, 4) the efficient resolution of controversies as between states, and 5) the shared interests of the several states in furthering fundamental substantive social policies. *Lesnick*, 35 F.3d at 946.

poration that purposefully avails itself of an American forum can be required to defend there. In my view, the majority's answer is mistaken.

My good colleagues find no purposeful availment.* However, at the time of the accident, Motivation had: (1) initiated a company policy to sell its products in the United States; (2) represented to American citizens that it had an address here; (3) hired a sales representative to oversee sales and service in a number of states, including North Carolina; (4) purchased liability insurance to protect itself in the event of an accident in the United States, including North Carolina; (5) and

---

*The district court explicitly found that Motivation had "concede[d]" the issue of whether Yates' claim arose out of or was related to the company's activities in the forum state. Notwithstanding the concession, the majority determines that the arising-out-of prong of the specific-jurisdiction test has not been met. But such concessions by litigants are binding in general, and the requirement of personal jurisdiction can be waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Motivation is therefore bound by this concession. It never appealed the district court's finding of a concession, and it never even filed a reply brief before this court to contest Yates' contention that it had made the concession. What we have here, therefore, is a double problem from Motivation's standpoint — namely, a concession followed by a waiver.

The majority goes to great lengths to excuse Motivation's litigation conduct. It asserts that the district court erred in attributing this concession to Motivation, remarking that the court below either misread Motivation's brief or accepted the company's misapplication of the law. The majority further states that we are not bound by this misreading or misapplication. *Ante* at 7 n.5. But there was no misreading in view of the majority's own concession that Motivation misunderstood the governing law. And there is no doubt that the company is bound by its legal error because we are dealing with a waivable form of jurisdiction. Even if the majority is correct that Motivation did not concede that Yates' claim arose out of or was related to Motivation's activities in North Carolina, the company certainly conceded *the issue* of whether the plaintiff's claim had so arisen when it stated that "the *prima facie* burden the Plaintiff needs to establish is that the Defendant purposely directed its activities toward the forum state." Defendant's Supp. Brief in Support of Motion to Dismiss at 6. It is on this primary issue that I primarily take exception with the majority's view.

advertised its products in nationally distributed trade journals and magazines.

It is not sufficient to analyze these facts piecemeal. And taken together, there is no doubt that Motivation has purposefully availed itself of the benefits and protections of North Carolina law. The majority is correct to note that merely placing a product in the stream of interstate commerce will not support the exercise of personal jurisdiction. *See Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989). Here, however, we have more. *See id.* at 659 (distinguishing "cases where a manufacturer employs an intermediary or distributor in the forum state"). Indeed, I am not aware of any case in which a court found no personal jurisdiction where a foreign company continuously rehired a sales representative for the forum state, all as part of a strategy of targeting this country and that state for increased sales.

The specifics of the Sales Agent Contract entered into by Motivation and its North Carolina sales agent are worthy of consideration. On March 21, 1994, the parties entered into an agreement, renewable each year, in which the company "appoint[ed] [Shannon] as its exclusive and sole agent for the sale of [Motivation's] manufactured products in the territory . . . set out herein." Motivation assigned Shannon the area of the United States encompassing Tennessee, North Carolina, South Carolina, Alabama, Georgia, and Florida. In April 1995, Florida was removed from Shannon's sales area and Mississippi was added. This territorial change is reflected in a hand-written amendment to the contract. But North Carolina has remained a part of Shannon's assigned territory since the contract was first formed. Indeed, Shannon continues to represent Motivation in North Carolina to this day.

The majority makes much of how little Shannon accomplished on behalf of Motivation in North Carolina. But whether or not Shannon was an effective sales representative is of no consequence. Motivation asserts that it has enjoyed limited success in obtaining business in the United States in general and North Carolina in particular. However, it is clear that the company did purposefully direct its sales efforts to that end.

As a consequence, the exercise of federal jurisdiction in North Carolina would not violate Motivation's "liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Similarly, the exercise of jurisdiction would not interfere with the company's ability "to structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Having found that the first two prongs of the specific jurisdiction inquiry are satisfied, I proceed to consider the final element of the test. This prong concerns the reasonableness of exercising jurisdiction — that is, whether the exercise of jurisdiction would offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Myer*, 311 U.S. 457, 463 (1940)). Though the majority finds it unnecessary to reach this issue in view of its decision on the first two prongs, the majority nevertheless chooses to consider the second element of the test despite its dispositive handling of the first. Indeed, the majority's silence on the question of reasonableness is instructive because it is this component of the inquiry that most dramatically reveals the injustice of preventing Yates from bringing suit in North Carolina.

The reasonableness inquiry requires a court to consider several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" in the forum. A court "must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 292); *see also Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994). As the district court held, these considerations compel the conclusion that the exercise of jurisdiction in this case comports with due process.

To begin with, though the burden on Motivation of defending itself in a foreign forum is not trivial, *see Asahi*, 480 U.S. at 114, that bur-

den is far from unfair in view of Motivation's decision to do business in North Carolina. Indeed, it may be cost effective for the company to conduct discovery and try the case in North Carolina because the accident site, the witnesses, and the crane itself are all located there.

In addition, the interests of both Yates and North Carolina in the exercise of jurisdiction over Motivation are compelling. The accident took place in North Carolina, and the company's alleged negligence caused the death of a North Carolina citizen. Further, the decedent left behind three children and a spouse who is also a North Carolina citizen. There can be no doubt that the state has a strong interest in rectifying wrongs allegedly committed within its territory against its citizens. And the state has an equally strong interest in protecting its consumers by requiring foreign manufacturers to comply with its safety standards, and by ensuring "the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action." *Lee v. Walworth Valve Co.*, 482 F.2d 297, 299-300 (4th Cir. 1973).

Finally, in view of Motivation's claim that it is not subject to suit in any state, Yates may not be able to sue the company in any jurisdiction in the United States. It is not right to let Motivation do business in this country while at the same time relieving it of the obligation to defend here when the death of an American citizen is allegedly caused by one of its products. And it is just as unfair to require this North Carolina widow to go to Canada to find out if her husband's life was negligently taken.

I respectfully dissent.