The HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff,

v.

JR MARKETING, LLC, et al., Defendants.

Civil Action No. 2:06cv626.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 26, 2007.

---

an insurance policy delivered to the insureds at their place of business in California. Because Hartford is defending the Virginia Action under a reservation of rights, the insureds have demanded that Hartford pay for independent counsel of their choice. California law apparently requires such independent representation; Virginia law does not.

Although this very issue is currently awaiting decision in a California coverage suit, Hartford asks this Court to step in and declare that the insureds have no right to independent counsel in the Virginia Action. However, the insureds' limited contacts with Virginia were not voluntary and thus are jurisdictionally insignificant. The Court therefore **GRANTS** the insureds' Motion to Dismiss for Lack of Personal Jurisdiction. (Docket No. 13.)

### I. *Factual and Procedural History*

The individual insureds, Jane Ratto, Penelope Kane, and Germain DeMartinis, formerly worked for Noble Locks Enterprises, Inc. ("Noble"), the United States affiliate of an Israeli company. Noble sold computer locks manufactured pursuant to proprietary technology licensed from a company in Taiwan. Noble and the individual insureds operated out of Novato, California.

In 2005, the individual insureds resigned their employment to form JR Marketing. JR Marketing, which is also based in Novato, sells the same computer locks to the same customers previously serviced by Noble, including three customers in Virginia. The new locks are manufactured by MIZ Engineering, Ltd. ("MIZ Engineering"), which claims to have acquired the United States patent for the technology used to produce the computer locks at issue.

Richard W. Driscoll, Esquire, Driscoll & Seltzer PLLC, Alexandria, VA, for The Hartford Insurance Company.

John A. Burlingame, Esquire, Squire Sanders & Dempsey LLP, Washington, DC, for JR Marketing, LLC, et al.

### OPINION AND ORDER

WALTER D. KELLEY, JR., District Judge.

Plaintiff The Hartford Casualty Insurance Company ("Hartford") is defending JR Marketing, LLC ("JR Marketing"), Jane Ratto, Penelope Kane, and Germain DeMartinis (collectively, the "insureds") in a business dispute currently pending in this Court (the "Virginia Action"). Hartford is providing the defense pursuant to

A. *The California Action*

JR Marketing soon took most of Noble's business. Noble struck back in September 2005 by filing suit against the insureds in the Superior Court of the State of California, Marin County, under the style *Avganim v. Ratto,* Case No. CV054204 (Cal.Super. Ct., Marin County filed Sept. 13, 2005) (the "California Action"). Though the Complaint asserts various causes of action, it essentially alleges that the insureds conspired with MIZ Engineering to steal Noble's customers and destroy its business.

The insureds tendered defense of the California Action to Hartford, the insurer from whom they recently had purchased Commercial General Liability Policy No. 84 SBA BX5709 DV (the "CGL Policy"). The CGL Policy was effective for one year beginning August 2005, and it covered qualifying claims asserted against the insureds anywhere in the United States.

Hartford initially refused to defend the California Action, claiming that the causes of action alleged in the Complaint were beyond the scope of the CGL Policy. The insureds thereafter filed a coverage action in California Superior Court under the style *JR Marketing, LLC v. Hartford Casualty Ins. Co.,* Case No. CGC06449220 (Cal.Super. Ct., S.F. City and County filed Feb. 3, 2006). Among other things, the insureds asked the Superior Court to determine the extent of Hartford's duty to defend under the CGL Policy.

One month after the insureds filed their coverage suit, Hartford decided to provide a defense in the California Action. However, it continued to reserve its right to deny indemnity should the insureds be subject to an adverse judgment.

On July 26, 2006, the Superior Court held that the CGL Policy obligated Hartford to defend the insureds. It further held that Hartford's reservation of rights obligated it to pay for independent counsel. The Court based its latter holding on Section 2860 of the California Civil Code, which provides:

> If the provisions of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured.... For purposes of this section, .... when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of a claim, a conflict of interest may exist.

The Court concluded that Hartford's appointed counsel inevitably would have a conflict of interest because Hartford hopes, on one hand, for a judgment on claims not covered by the policy, whereas the insureds' interests would be served by a judgment only on the covered claims.

After issuing its July 26, 2006 Order, the California Court stayed litigation of the insureds' remaining coverage claims, including their assertion that the CGL Policy obligates Hartford to indemnify them against any judgment rendered in the California Action. However, the Court granted the insureds leave to file a Second Amended Complaint. That pleading asks the Superior Court to declare that Hartford has a duty to pay for independent counsel in the Virginia Action, as well as in the California Action. The California Superior Court has not yet ruled on this claim.

B. *The Virginia Action*

A short time after Noble filed its Complaint in California, litigation between the parties erupted in Virginia. In December 2005, MIZ Engineering filed the Virginia Action to enforce its United States patent rights against Noble and related parties.

*MIZ Engineering, Ltd. v. Avganim,* No. 2:05cv722 (E.D. Va. filed Dec. 8, 2005). These defendants in turn filed a Third Party Complaint against the insureds, alleging essentially the same business torts as those asserted in the California Action.

The insureds tendered defense of the Third Party Complaint to Hartford. The insurance company hired the Fairfax, Virginia law firm of Trichilo, Bancroft, McGavin, Horvath, and Judkins, P.C. (the "Horvath Firm") to represent the insureds, but again reserved its right to deny indemnity. The insureds objected to Hartford's selection of counsel and demanded that Hartford once again pay for independent counsel pursuant to Section 2860 of the California Civil Code. Despite their objections, the insureds have cooperated fully with the Horvath Firm. Failure to do so would constitute a breach of the CGL Policy.

Hartford filed this Complaint for Declaratory Judgment nearly five months after it retained the Horvath Firm to represent the insureds. Hartford asks this Court to declare that Virginia law governs any coverage dispute arising out of the Virginia Action. Hartford further asks this Court to enter a declaratory judgment absolving it of any duty to pay for independent counsel. As noted above, the same issue is being litigated by the same parties in California Superior Court.

## II. *Analysis*

### A. *Standard of Review*

When a defendant moves to dismiss an action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden ultimately rests on the plaintiff "to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). However, a plaintiff need only make a prima facie showing of jurisdiction when, as here, the Court "rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue." *In re Celotex Corp.,* 124 F.3d 619, 628 (4th Cir. 1997). In making its ruling, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 676.

### B. *Personal Jurisdiction*

In evaluating whether it can exercise personal jurisdiction over a defendant, a court normally conducts a two-step inquiry. First, it must consider whether the forum state's long-arm statute authorizes jurisdiction. *Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir.2004). Second, it must ask if its assertion of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.; DeSantis v. Creations, Inc.,* 949 F.Supp. 419, 422 (E.D.Va.1996).

The two questions identified above "may be interrelated." *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 314 (4th Cir.1982). "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir.2002) (quoting *Stover v. O'Connell Assocs.,* 84 F.3d 132, 135–36 (4th Cir.1996)) (internal citation omitted); *see also Lockwood Bros., Inc. v. Arnold Speditions GmbH,* 453 F.Supp.2d 928, 933–34 (E.D.Va.2006) (Smith, J.) (conducting constitutional inquiry only); *Carmichael v. Snyder,* 209 Va. 451, 164 S.E.2d 703, 707 (1968) (acknowledging legislative intent). Therefore, this Court need only examine wheth-

er its exercise of personal jurisdiction over the insureds would offend due process.

The Supreme Court has recognized two types of personal jurisdiction—"general" and "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A court may exercise its "general jurisdiction" when a defendant has "continuous and systematic" contacts with the forum state. *Saudi v. Northrop Grumman*, 427 F.3d 271, 276 (4th Cir.2005). Because these contacts are extensive, the suit need not "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 411 n. 9, 104 S.Ct. 1868.

On the other hand, if insufficient contacts exist to warrant the exercise of general jurisdiction, the suit must "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* at 411 n. 8, 104 S.Ct. 1868. The Court has labeled this kind of personal jurisdiction "specific." *Id.*

### 1. *General Jurisdiction*

■ The Court cannot exercise general jurisdiction over the insureds because they have not maintained continuous and systematic contacts with Virginia. JR Marketing does not have an office in Virginia, nor does it regularly conduct business here. Besides its involvement in the Virginia Action and this coverage litigation, JR Marketing's only contacts with the Commonwealth of Virginia involve three small sales—once each to the Department of Homeland Security, George Mason University, and Fairfax County. General jurisdiction cannot rest on such sporadic activity in the forum state. *See ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997).

Similarly, the individual insureds have had little contact with Virginia. Ratto and Kane have visited Virginia on only one occasion. DeMartinis has never set foot in

the Commonwealth. While Ratto and Kane came to Virginia to meet with the attorneys that MIZ Engineering hired to file the Virginia Action, this single contact falls far short of general jurisdiction's "demanding standard." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002).

### 2. *Specific Jurisdiction*

■ The Fourth Circuit has adopted a three-part inquiry to guide the analysis of specific jurisdiction. District courts within the Circuit are to consider: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan*, 293 F.3d at 712; *see also Young*, 315 F.3d at 261 (articulating three-part inquiry).

The first prong asks whether or not a defendant has "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court has defined "minimum contacts" as some act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Based on the defendant's "conduct and connection with the forum state ... he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The purposefulness and foreseeability aspects of this standard "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of

another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. 559; *Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868).

The second prong addresses causation. While the Supreme Court has held that specific jurisdiction requires that the cause of action "arise out of or relate to" the defendant's activities in the forum state, *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868, it has yet to explore that phrase's meaning. *See id.* at 415 n. 10, 104 S.Ct. 1868. The lower courts that have confronted this issue differ in the degree of causation that they believe due process requires. *Compare Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir.1998) (applying "proximate cause" approach), *with Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir.1988) (applying "but for" approach), *and Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1216 (7th Cir.1984) (applying "but for" test in the context of the Michigan long-arm statute). However, the Courts of Appeal generally have adopted one of three approaches.

The "proximate cause" or "substantial relevance" test "examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *O'Connor v. Sandy Lane Hotel, Co.*, 496 F.3d 312, 319 (3d Cir.2007); *see Simpson v. Quality Oil Co.*, 723 F.Supp. 382, 388–89 (S.D.Ind.1989). This is the "most restrictive standard." *O'Connor*, 496 F.3d at 318. Conversely, the expansive "but for" test "is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *Id.* at 319; *see Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385–86 (9th Cir.1990), *rev'd on other grounds* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Finally, the "substantial connection" test assesses "whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable." *O'Connor*, 496 F.3d at 319; *see Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir.1998).

The Fourth Circuit has not adopted one of these approaches. Nor has it provided guidance in dicta that might favor one approach over the others.[1] This Court will therefore err on the side of inclusiveness and evaluate the insureds' contacts under the "but for" analysis. *Cf. Prod. Group Int'l, Inc. v. Goldman*, 337 F.Supp.2d 788, 794–95 (E.D.Va.2004) (Ellis, J.) (construing broadly the phrase "arising from" in the context of the Virginia long-arm statute).

The third prong of the due process inquiry asks whether the exercise of jurisdiction would "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In order to gauge the reasonableness of exercising jurisdiction, "a court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). "The interstate judicial system's interest in obtaining the most efficient resolution of controversies" also factors into this analysis. *Id.* (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559).

---

1. In *Yates v. Motivation Indus. Equip. Ltd.*, 38 Fed.Appx. 174 (4th Cir.2002), the Fourth Circuit acknowledged the different standards in dicta but did not adopt a particular approach. *Id.* at 178 n. 6.

■ Hartford has identified four "contacts" which it believes subject the insureds to this Court's jurisdiction. It relies upon: (1) the foreseeability of litigation in Virginia at the time the insureds purchased the CGL Policy; (2) the insureds' request that Hartford defend them in the underlying litigation; (3) the insureds' regular communications with the Horvath Firm; and (4) the insureds' demand for independent counsel. The Court finds each of these contacts insufficient to confer personal jurisdiction.

### a. *Foreseeability of Litigation in Virginia at the Time of Contracting*

Hartford asserts that the insureds could foresee litigation in Virginia because the CGL Policy covered claims asserted anywhere in the United States. However, the Fourth Circuit has held that the mere purchase of an insurance policy with nationwide coverage does not subject an insured to personal jurisdiction in every state of the union. *Yates v. Motivation Indus. Equip. Ltd.*, 38 Fed.Appx. 174, 178 n. 7 (4th Cir.2002).

Hartford also confuses the type of foreseeability that would constitute purposeful availment under these circumstances. The instant dispute concerns the insureds' rights under the CGL Policy, not the claims asserted against them in the Virginia Action. While the insureds might have foreseen business litigation in Virginia at the time they purchased the CGL Policy, they could not "reasonably anticipate being haled into court there" to determine their rights under an insurance policy delivered to them in California. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559.

### b. *Request for a Defense*

Hartford also contends that the insureds purposefully availed themselves of the benefits of Virginia's laws by requesting a defense in the Virginia Action. However, the insureds' request was not purposeful in a jurisdictional sense. *See Am. Casualty Co. of Reading Penn. v. LLC*, 2005 U.S. Dist. LEXIS 43552, at *10 (W.D.Tex. Oct. 3, 2005), *adopted by* 2006 WL 62819, 2006 U.S. Dist. LEXIS 67507 (W.D.Tex. Jan. 9, 2006) (holding that a request for defense is not purposeful conduct toward the forum state); *Admiral Ins. Co. v. Briggs*, 2002 WL 1461911, at *8, 2002 U.S. Dist. LEXIS 12030, at *24 (N.D.Tex. July 2, 2002) (same). While the insureds no doubt wanted to avail themselves of their policy rights, they did not deliberately choose to litigate against Noble in Virginia. They made a conscious choice to demand a defense, but the choice of the forum within which that defense would take place was made for them. Their contact with Virginia therefore was the result of "unilateral activity ... of a third person"—namely, Noble's decision to file a Third Party Complaint. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868. "It is well settled that the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state." *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 289 (5th Cir.1978).

### c. *Communication with the Horvath Firm*

Hartford further asserts that the insureds' interactions with the Horvath Firm, which is located in Virginia, constitute minimum contacts. The Court rejects this argument for the same reason it rejected the prior one. If Noble's lawsuit forced the insureds' to request a defense in Virginia, the lawsuit likewise compelled them to cooperate with appointed counsel licensed to practice in that jurisdiction. *See River's Edge Pharmaceuticals*, 2005 U.S. Dist. LEXIS 43552, at *10 (holding that defending a lawsuit in the forum state is not purposeful availment).

Hartford argues that the Fourth Circuit's decision in *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir.1990), supports the exercise of personal jurisdiction over the insureds. The defendant in that case, a California lawyer named Metzger, asked a Virginia legal expert, Smith, to assist him in a California forfeiture proceeding. *Id.* at 37. Metzger agreed to split his contingency fee with Smith, but refused to honor this agreement after receiving the fee. *Id.* 37–38. Smith then sued Metzger for breach of contract in the United States District Court for the Eastern District of Virginia. *Id.* at 38. In affirming jurisdiction, the Fourth Circuit found that Metzger purposefully availed himself of Virginia's laws by "initiat[ing] contact with Smith in Virginia, enter[ing] into contracts with Smith by virtue of action taken in Virginia, and carr[ying] on a continuing relationship with Smith in Virginia while the two worked on the . . . forfeiture case." *Id.* at 39–40.

*English & Smith* is inapposite to this case. Unlike attorney Metzger, the insureds did not reach into Virginia to solicit a contractual relationship and have not even entered into a contract with the Horvath Firm. Rather, they merely accepted the benefits (i.e., representation by the Horvath Firm) of an insurance contract that they had formed with Hartford in California.

Even if the insureds' interactions with the Horvath Firm could somehow constitute purposeful availment, the Court still would not have personal jurisdiction over them. As discussed above, Hartford's cause of action must arise out of or relate to the insureds' contacts with the forum. The gravamen of Hartford's suit concerns "the insureds' right to independent defense counsel." (Am. Compl. for Declaratory J. ¶ 1.) The instant action in no way involves, nor was it "made possible" by, the insureds' contact with the Horvath

Firm. *Lanier*, 843 F.2d at 909 (internal quotation marks omitted).

The only events that could potentially be said to have instigated this coverage case are: (1) the negotiation and purchase of the CGL policy; (2) Hartford's reservation of rights; and (3) the insureds' demand for independent counsel. The insureds contact with the Horvath Firm concerned the merits of the Virginia Action. It did not bear whatsoever on the coverage dispute.

### d. *Demand for Independent Counsel*

Finally, Hartford maintains that the insureds purposefully availed themselves of the benefits of Virginia's laws by demanding independent counsel. This contention is curious, since the right to independent counsel arises only by operation of a California statute. The insureds demanded independent counsel to capitalize on their insurance contract, rather than to seek refuge under Virginia's laws. The only reason the insureds conducted any activity at all in Virginia was because Noble forced them to litigate here.

In characterizing the insureds' demand for independent counsel as purposeful availment, Hartford has essentially tried to utilize its reservation of rights as a jurisdictional bootstrap. But for the reservation, the insureds could not have demanded independent counsel and no dispute would have arisen. Just as Hartford cannot transform Noble's unilateral activity into a jurisdictional stepping stone, it may not use its own activity to manufacture jurisdiction over the insureds.

### III. *Conclusion*

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 13) and **DISMISSES** this action.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**